UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
OCT 19 2006
PAMELA S. HOLLIS
BANKRUPTCY JUDGE

In re:                    )    Chapter 11
                          )
OLESEN CONSTRUCTION, INC., )    Case No. 06 B 08795
                          )
        DEBTOR.           )    Honorable Pamela S. Hollis

**STIPULATION AND INTERIM ORDER AUTHORIZING THE DEBTOR'S
USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION
PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE**

THIS CAUSE has come to be heard on the Debtor's Motion to Use Cash Collateral (the "*Motion*"). The Court, having reviewed the Motion and the exhibits thereto, having conducted a preliminary hearing on the Motion as provided for under Section 363(c) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), having considered the ~~evidence presented by the Debtor in support of the Motion and~~ representations the arguments and statements of counsel at such hearing, having considered relevant matters in the above-captioned bankruptcy cases, and being otherwise fully advised in the premises, based on the agreement of the Debtor (as defined below) and the Lender (as defined below), it was represented to the Court as follows:

A.  Adequate and sufficient notice of the Motion has been provided to all persons entitled thereto under Rule 2002 and 4001 of the Bankruptcy Rules and no further notice of the Motion is necessary.

B.  This matter constitutes a "core proceeding" within the meaning of 28 U.S.C. § 157.

revised cash collateral order clean version3
1640275/DTA

C.   The Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

D.   On July 24, 2006 (the *"Petition Date"*), Olesen Construction, Inc. filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the *"Bankruptcy Code"*). Since the Petition Date, the Debtor has remained in possession of its assets and has continued in operation and control of its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

E.   In the Motion, the Debtor seeks authority to use the proceeds from the collection of pre-petition accounts and other Cash Collateral (as defined below) in which Harris N.A., f/k/a Harris Bank Batavia, N.A. (as defined below), has an interest. Pursuant to Section 363(c)(2) of the Bankruptcy Code, the Debtor proposes to provide adequate protection to the Lender in connection with such actions.

F.   As of the Petition Date, the Debtor was indebted to Harris N.A., f/k/a Harris Bank Batavia, N.A. (*"Lender"* or *"Harris Bank"*) under that certain Commercial Security Agreement dated as of January 24, 2003 (the *"Pre-Petition Security Agreement"*), and three Promissory Notes in the total original principal amount of $202,875.00 between the Debtor and the Lender (the Promissory Notes and Pre-Petition Security Agreement, together with the other documents and instruments including those evidencing the liens and security interests of the Lender executed and delivered in connection therewith, being collectively referred to as the *"Pre-Petition Loan Documents"*) in the aggregate principal amount of no less than $224,551.21, and aggregate interest in the amount of no less than $2,165.03, plus any additional interest due, costs, expenses and other charges thereon, in respect of loans, advances and other financial accommodations made by the Documents (the *"Pre-Petition Obligations"*)

G. Under the Pre-Petition Loan Documents, as security for repayment of the Pre-Petition Obligations, the Debtor granted to the Lender valid, perfected, enforceable and nonavoidable security interests in and liens upon substantially all of their assets, as more particularly set forth in the Pre-Petition Loan Documents, including, without limitation, its accounts receivable, inventory, general intangibles, equipment and proceeds thereof. The properties and assets in which the Debtor granted security interests and liens to the Lender to secure repayment of the Pre-Petition Indebtedness are referred to herein as the *"Pre-Petition Collateral."*

H. As of the Petition Date, the Debtor was indebted to Harris Bank in the principal amount of approximately $224,551.21, plus accrued interest of $2,165.03, and other amounts (the *"Harris Bank Indebtedness"*). To secure the Harris Bank Indebtedness, the Debtor granted to Harris Bank a priority lien upon and security interest in the Pre-Petition Collateral. As of the Petition Date, Debtor had accounts receivable in the total aggregate sum of $311,500.00.

I. The Debtor requires the use of the Cash Collateral (as defined below) in order to continue to maximize the value of its assets. Without the use of the Cash Collateral, the Debtor's estate may suffer irreparable harm in that the value of the Debtor's assets may diminish, and the Debtor may not be able to preserve the value of its assets. Accordingly, the Debtor has requested that Harris Bank allow it continued use of the Cash Collateral.

J. Harris Bank has represented to the Court that it is willing to permit the Debtor to use the Cash Collateral only in the amounts and on the conditions provided for herein.

K. It is in the best interests of the Debtor's estate and its creditors that the Debtor be allowed to use the Cash Collateral on the conditions set forth herein.

**IT HEREBY IS ORDERED AND AGREED AMONG THE PARTIES HERETO:**

1. As used herein, *"Cash Collateral"* shall mean all cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents derived from the Pre-Petition Collateral, including all amounts received by the Debtor in collections on their accounts receivables which are subject to Harris Bank's liens and security interests in the Pre-Petition Collateral.

2. Subject to the terms and conditions of this Stipulation and Interim Order, the Debtor is hereby authorized to use the Cash Collateral as follows:

   (a) to make the payments to Harris Bank that are required under this Stipulation and Interim Order, and

   (b) to pay expenses of the Debtor as set forth below (the *"Post-Closing Expenses"*).

3. The Post-Closing Expenses shall not exceed the amount budgeted for such items in the budget attached hereto and incorporated herein by reference as *Exhibit 1* (the *"Budget"*) by more than 10 % per line item, without specific approval of Harris. The Debtor shall not expend any funds for any Post-Closing Expenses not included in the Budget without further Order of the Court; *provided, however,* that the Debtor may exceed the Budget amounts by no more than 10 % per line item; *provided, further,* that if Harris Bank in its sole discretion, approves in writing any additional expenditure not included in the Budget, the Debtor may use the Cash Collateral for such expenditure without further Order of the Court.

4. In consideration for Harris Bank's consent to the Debtor's use of the Cash Collateral, and as part of the adequate protection for any diminution in the value of Harris Bank's interest in the Pre-Petition Collateral, including the Cash Collateral, pursuant to Sections 361 and 363 of the Bankruptcy Code, the Debtor is authorized and directed to pay to Harris Bank, as adequate protection payments (the *"Adequate Protection Payments"*), regularly scheduled payments of $692 per week beginning on October 9, 2006.

5. As additional adequate protection, through the date of the Final Cash Collateral Hearing on December 14, 2006, at 10:30 a.m., and in consideration of Harris Bank's consent to the aforesaid use of cash collateral and to provide Harris Bank with adequate protection pursuant to Sections 361 and 363(e) of the Code, Harris Bank is hereby granted a general and continuing post-petition replacement lien upon and security interest in an amount equal to the total Pre-Petition Obligations, of the Debtor's total right, title and interest in and to its property and interests in property, tangible or intangible, now existing and/or owned and hereafter arising and/or acquired and whatsoever located (the "Post-Petition Collateral"), together with additions and accessions thereto, replacements, therefore, and the proceeds thereof, and as described in the Pre-Petition Loan Documents. Without limiting any of the foregoing, Debtor's grant of a security interest to Harris Bank shall include a security interest in:

(i) all of the Debtor's deposit accounts (general or special) with any financial institution with which Debtor maintains deposits.

(ii) all of the Debtor's "Instruments"'

(iii) all of the Debtor's now owned or hereafter acquired monies, and any and all other property and interests in property of Debtor now or hereafter coming into the actual possession, custody, or control of Harris Bank or any agent or affiliate of Harris Bank in any way or for any purpose (whether for safekeeping, deposit, custody, pledge, transmission, collection or otherwise);

(iv) all of the Debtor's books and records relating to any of the property described herein; and

(v) all of the Debtor's accounts receivable

(vi) all of the Debtor's other collateral not specifically referred to herein that is set forth in the Pre-Petition Loan Documents.

Harris Bank shall not be required to obtain security agreements or to file financing statements or other documents or to take any other action in order to validate or perfect the security interests and liens granted to it by this Order.

6. As additional adequate protection, subject to Court approval, by November 15, 2006, the Debtor intends to sell a 1998 Manitou forklift, a 1999 Chevrolet Express Van, a 1995 GMC Vandura G3500 Cargo Van, a 1995 Chevrolet Astro Van, and a series of other miscellaneous equipment . The Debtor shall pay the greater of 60% of the net proceeds or $20,000, directly to Harris Bank, less any fees due to the United States Trustee, except that the portion of the net proceeds attributable to the sale of vehicles shall be subject to disgorgement if Harris Bank has not properly perfected its liens with respect to said vehicles. If the net proceeds are less than $20,000, the total amount of such net proceeds shall be paid to Harris Bank, less any fees due to the United States Trustee, except that the portion of the net proceeds attributable to the sale of vehicles shall be subject to disgorgement if Harris Bank has not properly perfected its liens with respect to said vehicles. The portion of proceeds from the sale paid to Harris Bank shall reduce the total amount of the Harris Bank Indebtedness and Cash Collateral. Pursuant to 11 U.S.C. § 506(c), the remaining sale proceeds not paid to Harris Bank, if any, shall be carved out for the benefit of the bankruptcy estate as the reasonable, necessary costs and expenses of disposing of the collateral of Harris Bank.

7. Unless an extension of this order is allowed by the Court, or a final order allowing use of Cash Collateral is entered by the Court, the Debtor's right to use the Cash Collateral under this Stipulation and Interim Order shall cease and terminate immediately, and without further notice, upon the earliest of: (a) December 14, 2006, the date of the Final Cash Collateral Hearing,

subject to any reasonable extensions thereof by the parties' attorneys or the Court due to scheduling; (b) entry of an order converting this case to a case under Chapter 7 of the Bankruptcy Code; (c) entry of an order dismissing or suspending this case; (d) entry of an order in this case appointing a trustee under Section 1104 of the Bankruptcy Code; (e) confirmation of the Debtor's Chapter 11 Plan of Reorganization, at which time the provisions of the confirmed plan shall control the future relations between the Debtor and Harris Bank.

8.     The Debtor's right to use Cash Collateral under this Stipulation and Interim Order may cease and terminate upon fifteen business (15) days' written notice, from Harris Bank to the Debtor and those persons and entities who have requested notice in these proceedings, of the earliest to occur of the following events of default, subject to the Debtor's right to cure as set forth below: (a) the date upon which the Debtor's disbursements exceed the amounts permitted under this Stipulation and Interim Order by more than 10% without Harris Bank's consent; (b) the failure of the Debtor to make any payments to Harris Bank when due under this Stipulation and Interim Order; or (c) the failure of the Debtor to perform or comply with any other terms or covenants in this Stipulation and Interim Order. During such fifteen (15) day period, the Debtor shall have the right to cure default by making any payments which are due under this Stipulation and Interim Order, or by correcting any non-compliance with the terms or covenants in this Stipulation and Interim Order. If Debtor wishes to contest the notice of default, Debtor shall have the right, within its sole discretion, to file a motion or other request for relief upon emergency notice objecting to the notice of default. Notice of any such motion or request for relief by the debtor shall be sufficient if made by facsimile, personal delivery, or by other actual receipt of the written request for relief.

9.     In the event of a termination in accordance with paragraphs 7 and 8 above, Harris Bank and the Debtor reserve any and all rights afforded them under applicable bankruptcy law as

to the use of the Cash Collateral. In particular, Harris Bank reserves all rights, including, without limitation, (i) the right to move the Court for appropriate relief, including the provision of additional adequate protection, or the modification, termination and lifting of the automatic stay of Section 362 of the Bankruptcy Code and authorization to foreclose and collect upon any of the Pre-Petition Collateral, (ii) the right to demand that all of the Cash Collateral be segregated and accounted for as provided in Section 363(c)(4) of the Bankruptcy Code, and to refuse to consent to the use of the Cash Collateral or condition such consent upon such terms and conditions as Harris Bank shall deem appropriate, including, but not limited to, the condition that interest be paid under the Harris Bank Loan Documents at the applicable contractual default rates from the Petition Date, (iii) the right to assert an entitlement to payment under Section 507(b) of the Bankruptcy Code, or the right at any time to assert a lack of adequate protection of Harris Bank's interest in the Pre-Petition Collateral, and (iv) the right to seek the appointment of a trustee in this case, or the conversion of this case to a case under chapter 7 of the Bankruptcy Code.

10.   Notwithstanding the foregoing paragraphs 7 and 8, the obligations of the Debtor and the rights, claims, security interests, liens and priorities of Harris Bank with respect to all transactions which occurred prior to the termination of the Debtor's right to use the Cash Collateral, including, but not limited to, this Stipulation and Interim Order, shall remain unimpaired and unaffected by any such termination and shall survive any such termination.

11.   The rights and obligations of the Debtor and the rights and claims of Harris Bank arising under this Stipulation and Interim Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities existing as of the Petition Date.

12.   Upon the entry of an order in this case amending, supplementing, staying, vacating or otherwise modifying this Stipulation and Interim Order without the consent of Harris

Bank, the consent of Harris Bank to the Debtor's use of the Cash Collateral shall hereby be deemed to have been withdrawn.

13. This Stipulation and Interim Order shall in no way limit Harris Bank's rights to seek other or additional adequate protection, to seek relief from the automatic stay, or to take any other actions in these cases.

14. On a monthly basis, the Debtor or its professionals shall submit by telecopy to Harris Bank, addressed to the attention of Larry Rhum at the Lender's office located at 111 West Monroe Street, 11th Floor, Chicago, Illinois (fax number 312-293-4768), or as otherwise agreed, the following information: (a) summary account receivable report, and (b) listing of cash receipts.

15. In addition, the Debtor shall in good faith and in a reasonably prompt manner: (a) provide to Harris Bank and its professionals quarterly operating statements, the financial reports submitted to the United States Trustee's Office and such other information as Harris Bank and its professionals may from time to time reasonably request; (b) answer reasonable inquiries and requests of Harris Bank and its professionals for information; and (c) provide full cooperation and information to Harris Bank and its professionals as to the value and description of the assets of the Debtor and the possible sale or disposition of those assets.

16. Nothing contained in this Stipulation and Interim Order or Harris Bank's consent to the use of the Cash Collateral pursuant to this Stipulation and Interim Order shall constitute a determination that Harris Bank is not entitled to additional adequate protection for continued use of the Cash Collateral. This Stipulation and Interim Order shall not constitute a finding by the Court that Harris Bank's interests in Pre-Petition Collateral are "adequately protected" within the meaning of Sections 361 and 363 of the Bankruptcy Code. Nothing in this Stipulation and Interim Order, including the Motion or the Budget, shall constitute or be construed as a consent,

acknowledgment or agreement by Harris Bank to the Debtor's calculation of the value of accounts receivable, inventory or the Cash Collateral, and nothing in this Stipulation and Interim Order shall constitute a waiver or estoppel with respect to the rights of Harris Bank to dispute the validity or accuracy of such calculations or any contention with respect to collateral values or adequate protection based thereon.

17. Nothing in this Stipulation and Interim Order shall in any way prejudice or compromise any rights or claims Harris Bank may have in respect of the Debtor parties other than the Debtor.

18. The provisions of this Stipulation and Interim Order shall be binding upon and inure to the benefit of Harris Bank and the Debtor, and their respective successors in interest and assigns under applicable law.

19. This Stipulation and Interim Order is immediately valid and fully effective upon its entry. The Court shall retain jurisdiction to resolve all disputes and controversies regarding the interpretation or implementation of this Stipulation and Interim Order.

20. The Debtor shall make every reasonable effort to insure the collection of all pre-petition and post-petition accounts and to preserve, maintain and protect the Pre-Petition Collateral and the Post-Petition Collateral and the proceeds thereof.

21. This Stipulation and Interim Order shall be governed by, and construed in accordance with, the laws of the State of Illinois and the laws of the United States.

22. A final hearing to consider the entry of a final order approving the Debtor's use of the Cash Collateral is scheduled for December 14, 2006, at 10:30 a.m.

23. The Debtor shall forthwith serve by overnight mail a copy of this Stipulation and Interim Order upon Harris Bank, the United States Trustee and the Debtor's 20 largest creditors determined in accordance with Bankruptcy Rule 1007(d). The Debtor shall make copies of any

proposed final order approving the Debtor's use of the Cash Collateral available for inspection by such persons, and shall file a copy of such proposed final order with the Court as soon as practicable but in no event later than December 1, 2006.

24. Any and all responses to the Motion and/or objections to the relief requested therein shall be in writing and shall be filed with the Court on or before December 11, 2006 and simultaneously served by hand delivery upon counsel to the Debtor and the Harris Bank as follows:

| for the Debtor: | for Harris Bank: |
|---|---|
| Forrest L. Ingram<br>Forrest L. Ingram, P.C.<br>79 W. Monroe St., #1210<br>Chicago, Illinois 60603<br>(312) 759-2838<br>(312) 759-0298 (Fax) | David T.B. Audley, Esq.<br>CHAPMAN AND CUTLER LLP<br>111 West Monroe Street<br>Chicago, Illinois 60603<br>(312) 845-2971<br>(312) 516-3971 (Fax) |

In the event that no objections to the relief requested in the Motion are filed, the Court may enter a final order approving the Debtor's use of the Cash Collateral without further notice.

**ENTER:**

_____
United States Bankruptcy Judge

OCT 19 2006

Date: _____, 2006

APPROVED AS TO FORM AND SUBSTANCE:

                                                  Forrest L. Ingram, P.C.,
                                                  Counsel for the Debtor

By: _____
                                                  Forrest L. Ingram, P.C.,
                                                  79 W. Monroe St., #1210
                                                  Chicago, IL 60603
                                                  (312) 759-2838


CHAPMAN AND CUTLER LLP
Counsel for Harris Bank

By: _____
                                                  One of Its Attorneys

David T.B. Audley
111 West Monroe Street
Chicago, Illinois 60803
(312) 845-3000