THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 from Chapter 11 |
| | ) | |
| OLESEN CONSTRUCTION, INC. | ) | Case No. 06 B 8795 |
| | ) | |
| Debtor. | ) | Judge Pamela Hollis |

### RESPONSE IN OPPOSITION TO MOTION OF HARRIS TRUST AND SAVINGS BANK FOR PAYMENT OF SALE PROCEEDS AND FOR RELIEF FROM STAY

NOW COMES FORREST L. INGRAM, P.C., ("*Ingram*"), former attorneys for chapter 11 debtor and debtor in possession OLESEN CONSTRUCTION, INC. ("*Debtor*") and opposing the motion of Harris N.A., f/k/a Harris Trust and Savings Bank, for itself and as successor by merger to Harris Bank Batavia, N.A. *("Harris"),* for payment of sale proceeds and relief from stay, states as follows:

1. Debtor filed a voluntary chapter 11 petition on July 24, 2006 and that the case was converted to chapter 7 on February 20, 2007.

2. Prior to July 24, 2006, Debtor entered into various business loans with Harris, but Ingram has insufficient information at this time to respond in detail to Harris' allegations about each of those loans and the amounts remaining due on them.

3. When Debtor filed its chapter 11 petition, it listed on Schedule D the total amount due and owing to Harris as of the Petition Date and indicated that the value of the collateral secured the loan was $0.00. A copy of Schedule D is attached hereto as **Exhibit A.**

4. In the chapter 11 case, Debtor listed on Schedule B its interest in vehicles worth $17,500 and in machinery worth $125,000. A copy of Schedule B is attached as **Exhibit B.**

5. During the chapter 11 case, Harris did not object to the information set forth on

Schedules B or D.

6. During the chapter 11 case, Harris did not file a proof of claim. Harris did not file a proof of claim until June 5, 2007, four months after the case was converted to chapter 7.

7. During the chapter 11, Harris was represented by attorney David Audley of Chapman & Cutler. On behalf of Harris, Audley orally asserted a security interest in Debtor's accounts receivable as well as other assets, including vehicles and equipment.

8. On the basis of these representations, Debtor entered into a cash collateral order with Harris, and made regular adequate protection payments to Harris throughout the chapter 11 case. The cash collateral order was extended from time to time prior to the conversion to chapter 7.

9. During the chapter 11, the court entered several orders granting the application for attorney fees and accountant fees of Debtor's professionals.

10. On January 16, 2007, the court entered an order granting Debtor's motion to sell certain vehicles and equipment. The vehicles and equipment listed in the Debtor's motion included the following:

    a. 1999 Chevrolet Express Van, $3,500

    b. table saw, $150

    c. 1995 GMC Vandura G3500 Cargo Van, $1,500

    d. 1995 Chevrolet Astro Van, $1,000

    e. equipment (with list attached as exhibit to motion to sell): $10,000

    f. more equipment, $1,800

11. In the motion, Debtor stated at paragraph 8: "Harris Bank claims perfected security interests in all of the aforementioned vehicles and the equipment. As of the date of this Motion, however, the Debtor has not confirmed that the Bank's liens on the vehicles are valid and

2

Document    Page 3 of 6

perfected."

12. In the motion, Debtor stated at paragraph 9: "Debtor expects the proceeds from the sale of these assets to be less than $20,000."

13. On January 16, 2007, the court entered the order allowing the sale. A copy of the order is attached hereto as **Exhibit C**. Pursuant to the order, the proceeds of the sale were to be deposited into an escrow account with Debtor's attorney. It was not clear at that time whether Harris had valid, perfected security interests in the vehicles and equipment, so the order states: "If Harris Bank does not have valid, enforceable, and perfected security interests in the vehicles, the proceeds attributable to the sale of the vehicles shall be held in escrow for the benefit of the bankruptcy estate."

14. On January 23, 2007, attorneys representing the Debtor, the U.S. Trustee, and Harris appeared in court for a continued hearing on the Debtor's use of cash collateral. See Affidavit of Peter L. Berk, attached hereto as **Exhibit D**.

15. At the hearing, Steve Wolfe, attorney for the U.S. Trustee, filed a notice of conversion to Chapter 7, with a hearing on conversion scheduled for February 20, 2007. See Exhibit D.

16. After the hearing, attorney Peter Berk, representing the Debtor, and David Audley, representing Harris, had a conversation in which Audley indicated to Berk that Harris would not be making any claim to the proceeds of the sale of Debtor's vehicles and equipment. See Exhibit D. Immediately thereafter, on January 24, 2007, Peter Berk reported the conversation to Forrest L. Ingram ("Forrest Ingram") in a Memorandum, attached as page 2 of Exhibit D.

17. In his Memorandum, Peter Berk stated to Forrest Ingram: "Subsequent to yesterday's hearing, Dave Audley stated to me that Harris Bank would not make any claim to the

3

proceeds from the Debtor's sale of equipment and vehicles." Page 2 of Exhibit D.

18. After the court entered the order approving the sale, the sales approved by the court were consummated. Forrest Ingram received the proceeds of the sale and deposited them into his firm's Client Trust Fund Account for the Debtor. See Affidavit of Forrest L. Ingram, attached hereto as **Exhibit E**. The checks deposited were in the following amounts:

  a. $1,810 on 2/5/07 [re: JC Construction]

  b. $1,500 on 2/5/07 [re: William Mickelberg]

  c. $1,000 on 2/5/07 [re: Patrick Albrecht]

  d. $3,650 on 2/13/07 [re: BGH Construction Co., Inc.]

  e. $10,000 on 2/16/07 [re: BGH Construction Co., Inc.]

19. After reviewing the communiqué from Berk indicating that Harris was not laying claim to any of the sale proceeds, and prior to the conversion of the case to a case under Chapter 7, Forrest Ingram caused the Debtor's estate to issue checks from the Client Trust Fund Account to the Debtor's professionals whose fees had been approved and ordered paid by the Court on January 16, 2007. The following checks, representing a pro rata distribution of the sale proceeds, were issued on the indicated dates:

  a. $2,149.20 to Sikich, LLP on 2/15/07

  b. $5,810.80 to Forrest L. Ingram, P.C. on 2/15/07

  c. $2,362.50 to Sikich, LLP on 2/17/07

  d. $6,387.50 to Forrest L. Ingram, P.C. on 2/17/07

See Exhibit E. The payment of those amounts reduced the Debtor's Client Trust Fund account to $0.00 prior to the conversion of the case to Chapter 7 on February 20, 2007.

20. After the disbursement of all funds in the Debtor's Trust Fund Account, Debtor still

4

owed its professionals several thousands of dollars each on fees awarded by the Court.

21. On March 6, 2007, attorney Charles J. Myler was appointed to be the interim trustee for the Debtor in its chapter 7 case.

22. On March 22, 2007, Ingram filed on behalf of the Debtor a "Final Debtor in Possession Report." A copy of the report is attached hereto as **Exhibit F**.

23. Assets of the Debtor remaining in the estate at closing included two adversary proceedings valued at over $400,000, a DIP account with $523.77 in it, and some equipment described in paragraph 8 of the Report. That equipment was obviously not sold.

24. It was not until June 5, 2007 that Harris filed a proof of claim in the chapter 7 case.

25. On June 6, 2007, Ingram filed a motion requesting payment of administrative expenses. Neither the trustee nor Harris objected. On June 26, 2007, the Court entered an order granting Ingram's motion.

26. The court should deny Harris' motion because:

    a. Harris, although participating in the chapter 11 case and notified of the sale, did not file a proof of claim in the chapter 11 case;

    b. Harris did not timely provide to the Debtor prior to or after the sale of vehicles and equipment any documentation to establish that it had a valid perfected security interest in any of the vehicles or equipment being sold;

    c. Harris explicitly waived its right to claim any interest in the proceeds of the sale by asserting to Debtor's counsel that it would not be making a claim to the proceeds of the sale;

    d. The proceeds of the sale have long ago been distributed for the benefit of the estate to pay Debtor's professionals;

    e. Harris should be estopped from asserting its rights against proceeds that were

5

distributed while Harris took no action to claim any of the proceeds but rather led Debtor's counsel to believe that Harris either could not prove that it had any security interest in the collateral or that it had no interest in pursuing the proceeds because they were minimal.

WHEREFORE, respondent FORREST L. INGRAM, P.C. prays this court to deny the motion of Harris N.A., f/k/a Harris Trust and Savings Bank, for itself and as successor by merger to Harris Bank Batavia, N.A., to direct the trustee to take possession of and to pay the equipment sale proceeds to Harris. Respondent ask for such further relief as this Court deems just.

> Respectfully submitted,
>
> FORREST L. INGRAM, P.C.
>
> By /s/ Forrest L. Ingram
> One of Its Attorneys

Forrest L. Ingram, #3129032
Peter L. Berk
Patrick F. Lambe
Joan D. Clay
FORREST L. INGRAM, P.C.
79 W. Monroe, Suite 900
Chicago, IL 60603
(312) 759-2838